**Franklin L. Ferguson, Jr., State Bar No. 170875**
**3580 Wilshire Boulevard, Suite #1732**
**Los Angeles, CA 90010-2534**
**(323) 936-4375; (323) 679-1064 (Facsimile)**
**flfergusonjr@igc.org**

**Attorney for Plaintiff, Ken Sheppard**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEN SHEPPARD, an individual,**<br><br>**Plaintiff,**<br><br>v.<br><br>**COUNTY OF LOS ANGELES, a local public entity; DEPUTY PLUNKETT (Badge #463466), an individual; DEPUTY HOLLIS (Badge #220214), an individual; DEPUTY RODRIGUEZ (Badge #45412), an individual; DEPUTY HANSON (Badge #488368), an individual; and DOES 1-10, inclusive,**<br><br>**Defendants.** | Case No. CV 15-02920 SJO (JCx)<br><br>**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS COUNTY OF LOS ANGELES, BONNIE HANSON, BOOKER T. HOLLIS, CAROLINE RODRIGUEZ AND TAI PLUNKETT TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:** August 3, 2015<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom #1, the Honorable S. James Otero, presiding |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Ken Sheppard opposes the motion to dismiss his First Amended Complaint for Damages, brought by Defendants County of Los Angeles, Deputy Bonnie Hanson, Deputy Sergeant Booker T. Hollis, Deputy Caroline Rodriguez and Deputy Tai Plunkett to dismiss Plaintiff's First Amended Complaint, pursuant to the Federal Rules of Civil Procedure (hereinafter, "FRCP"), Rule 12 (b)(6).

Plaintiff Ken Sheppard brought the instant lawsuit, a civil rights action for compensatory and punitive damages, due to the fact that County of Los Angeles law enforcement officers conducted an illegal detention, subjected Plaintiff to assault, battery, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress. Defendants further engaged in an impermissibly invasive search, relative to Plaintiff's vehicle and person. These actions were all taken in violation of Plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, made applicable to the states via 42 U.S.C. § 1983.

## II. ARGUMENT

### A. The County of Los Angeles is Subject to *Monell* Liability Liable Because it Failed to Train, Discipline and Supervise its Law Enforcement Officers, Including Deputy Plunkett.

A municipality may be liable under Section 1983if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. *Canton v. City of Ohio*, 489 U.S. 378, 389 (1989); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Where a municipality's failure to train, supervise, and/or discipline its employees is the result of deliberate indifference, this inaction can constitute a policy or custom for § 1983 purposes. *Canton*, 489 U.S. at 389; *Chew*, 27 F.3d at1445. When establishing "deliberate indifference" in this context, it is sufficient if the plaintiff demonstrates that the municipality had constructive notice of the need to remedy the omission in order to avoid violations of constitutional rights but failed to

do so. *Gibson v. Washoe County*, 290 F.3d 1175, 1188, n. 8 (9th Cir. 2002); *see also Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997) ("[A] municipal defendant's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct").Constructive notice can be demonstrated if the need to remedy the omission would be obvious to a reasonable person. *Gibson*, 290 F.3d at 1195.

In the present case, the allegations sufficiently establish that the County of Los Angeles ("County") had an informal policy which condoned the misconduct by Deputy Plunkett, Deputy Rodriguez and Deputy Hanson, racial profiling and excessive force. The First Amended Complaint alleges the deputies conduct was consistent with a custom, pattern and/or practice promulgated by deputies of the Los Angeles Sherriff's Department. The First Amended Complaint alleges that the County was aware that these deputies had a propensity to engage in misconduct and to violate the constitutional rights of citizens.

Through the course of discovery, Plaintiff will be afforded the opportunity to gather the evidence necessary to support these allegations, in either the context of a dispositive evidentiary motion or at trial. The cases cited by Defendants are framed within the context of such dispositive motions-for summary judgment.

Discovery will afford Plaintiff the opportunity to determine the number and nature of any prior complaints of misconduct against the Deputy Defendants. To the extent that any discovered prior incidents involve egregious meritorious of severe discipline and extensive supervision, Plaintiff's theories of relief will be bolstered. For instance, evidence revealing credible instances that Deputy Plunkett engaged in racial profiling, excessive force and/or assault would be highly probative.

Any failure to impart discipline, re-training or increased supervisory oversight in connection with discovered incidents would further help to establish Plaintiff's case. The failure to adequately discipline, re-train and supervise any of the subject deputies would amount to LASD's condoning of and deliberate indifference to

repeated acts of misconduct. Such would demonstrate that these Deputies knew they could violate the constitutional rights of Plaintiff without consequence.

Moreover, this failure is reflective of a wider policy, custom and/or practice of failing to subject deputies who violate citizens' constitutional rights to proper discipline, re-training or supervision. As a result, LASD deputies are encouraged in their belief that they can violate the rights of citizens with impunity, and that such misconduct will not adversely affect their promotion opportunities, wages or careers.

Numerous cases hold that this type of evidence is sufficient to state a *Monell* claim. In *Williams v. City of Chicago*, 658 F.Supp.147, 153-54 (N.D. Ill. 1987), the court found the existence of numerous prior complaints of excessive force against one officer was sufficient to establish that the defendant city was aware of his violent behavior but took no action against him. From this, the court found it could be inferred that the defendant city had an informal policy of condoning the use of excessive force. *Id*. In *Parrish v. Luckie*, 963 F.2d 201, 205 (8th Cir. 1992), the court ruled that prior complaints of sexual misconduct against an officer were relevant to showing that the City had a policy of custom of tolerating such acts. Likewise, in *Beck v. City of Pittsburgh*, 89 F.3d 966, 972-73 (3rd Cir. 1996), the court found that prior complaints of excessive force against an officer were sufficient to allow the jury to infer that the chief policymaker knew or should have known of the officer's violent propensity, which was sufficient to trigger municipal liability. In *Guerrero v. County of San Benito*, Case No. C 08-0307 PVT, 2009 WL 4251435, at 4 (N.D. Cal. Nov. 23, 2009), the court held that the plaintiff's evidence created a genuine issue of material fact whether the County and official policymaker's "inaction in light of [defendant officer's] prior misconduct establishe[d] official policy or custom that contributed to" the defendant officer's acts.[1]

---

[1]The above cases are but a few of the numerous decisions rendered by federal courts throughout the country which hold that prior complaints against police officers can establish municipal liability in a § 1983 action because it is evidence that the

Plaintiff has indeed cited a "single example of racial profiling or unconstitutional conduct committed against a black person by the defendant deputies: the instant facts, involving Plaintiff being victimized by the Deputy Defendants. The best evidence of this victimization is the video-taped evidence of the incident. This video-tape is lodged concurrently, via CD-Rom, and has been provided to counsel for Defendants.

  B. <u>The First Amended Complaint Properly Alleges Several Constitutional Torts Against the Individual Defendants.</u>

    1. *The initial decision to approach plaintiff's vehicle was in violation of the Fourth Amendment.*

Nowhere in ¶¶ 13-16 of the First Amended Complaint, nor within any other section of that pleading, did Plaintiff allege that Deputy Plunkett was aware of (a) the vehicle's tinted windows or (b) the absence of license plates prior to the deputy's approach. Instead, in ¶18, Plaintiff specifically alleges, "Deputy Plunkett had not been called to the scene of Mr. Sheppard's location by a neighbor or any other witness. He was not responding to a radio call o any type. He was not aware of the status of Plaintiff's license plates, nor any issues with the relative tint of Plaintiff's vehicle windows. No person had alerted Deputy Plunkett's station of suspicious activity in the area. In response to Deputy Plunkett's question concerning his activities, Mr. Sheppard advised that he was sitting in his vehicle working. Deputy Plunkett asked, "why?" making no mention of having noticed tinted windows, nor that Deputy Plunkett had taken any notice with the vehicle's license plates. Deputy Plunkett next asked if Plaintiff was engaged as a "P.I. or something." Upon

---

municipality or other local government has an informal policy of condoning the type of behavior that was the subject of the complaint. *Fletcher v. O'Donnell*, 867 F.2d 791, 793-795 (3rd Cir. 1989); *Mizell v. Lee*, 829 F.Supp. 1338, 1342 (M.D. Georgia 1993); *Thomas v. City of Pittsburgh*, 34 F.Supp.2d 965, 968-969 (W.D. Penn 1999); *McGrath v. Scott*, 250 F.Supp.2d 1218, 1227-1228 (D. Arizona 2003).

information and belief, Deputy Plunkett approached Plaintiff as the result of racial profiling, motivated by the fact that Plaintiff is Black.

The entire analysis proffered by Defendants in Section IV(B)(1) is based upon a presumption that has no basis in the reality of the First Amended Complaint. It is Plaintiff, not Defendant, who is the author of the allegations.

> 2. *Plaintiff does not allege that he was "Staking out a house," invalidating Defendants' purported rationale for the search of his vehicle.*

Again, Defendants cannot "create" allegations against which they might prefer to defend.

> 3. *Deputy Rodriguez' pat-down was unreasonable.*

Given the fact that the detention was unreasonable, based upon pretext, the decision to have a female pat-down Mr. Sheppard in the non-emergency presence of available male deputies, was in violation of Mr. Sheppard's Constitutional Rights.

> 4. *Plaintiff has articulated excessive force against Deputy Plunkett.*

Contrary to Defendants' representation, Plaintiff alleged no "sudden" movements whatsoever. Plaintiff removed his earpiece, after Deputy Plunkett released his arm. In ¶20, Plaintiff alleges that, "[i]n a pretextual movement, Deputy Plunkett immediately pointed his weapon, a Beretta 92F, at the side of Mr. Sheppard's head, less than 10 inches away from Mr. Sheppard's left temple. Deputy Plunkett aggressively shouted 'do not fucking be reaching.' In response, Mr. Sheppard calmly reminded Deputy Plunkett that he had had made no sudden movements, but had simply removed his earpiece."

The language of the First Amended Complaint is instructive:

> "Deputy Rodriguez continued to observe, keying her radio microphone. Deputy Plunkett continued to shake, with his Beretta still pointed at Mr. Sheppard's left temple. No one immediately advised Deputy Plunkett to lower his weapon, or to stand down. Mr. Sheppard

protested to Deputy Rodriguez and Sergeant Hollis that Deputy Plunkett continued to have his gun pointed at Mr. Sheppard's head, despite the fact that Deputy Plunkett had neither identified nor articulated a crime in commission.

A second female deputy, later learned to be Deputy Hanson, approached Mr. Sheppard with her taser drawn. Deputy Plunkett continued to point his weapon, hand shaking, at Plaintiff's left temple. Mr. Sheppard continued to strictly comply with all directives, to the best of his ability.

As Sergeant Hollis began to attempt to exert control over the scene, he advised Deputy Plunkett to stand down. Sergeant Hollis specifically asked Deputy Plunkett to explain the episode, but Deputy Plunkett refused to answer. Mr. Sheppard asked Sergeant Hollis to explain the reason that Deputy Plunkett addressed Mr. Sheppard with profanity. Mr. Sheppard's hands remained in plain view. Mr. Sheppard also complained regarding the disrespectful and unprofessional manner in which Deputy Plunkett had initiated the entire sequence of events, consistently attempting to exacerbate, as opposed to ameliorate the circumstances.

At some point, prior to holstering his weapon, Deputy Plunkett "cocked" the hammer of his weapon, while continuing to point the weapon, less than one foot from Mr. Sheppard's temple. The act of cocking the hammer made rendered the situation even more dangerous, since the weapon was infinitely more capable of firing accidentally, given the sudden vibration of a passing vehicle, a gust of wind, or an accidental bump from another Deputy.

Sergeant Hollis eventually was able to convince Deputy Plunkett to step back from the Chevy Tahoe's driver's side door, so

that Mr. Sheppard could exit the vehicle. Even as Sergeant Hollis was making these statements, Deputy Plunkett continued to point his weapon at Mr. Sheppard's head, even contorting his own head towards his right shoulder and evidencing a very angry facial expression.

When Sergeant Hollis' attempt to open the Tahoe's driver's side door, his attempt to open the door from the outside was unsuccessful. Mr. Sheppard calmly informed Sergeant Hollis that the door was locked and would be needed to open the door from the inside. Once Mr. Sheppard patiently and deliberately unlocked his door, Deputy Rodriguez stepped towards Mr., Sheppard, grabbed his left arm and wrist and commanded Mr. Sheppard to turn. Mr. Sheppard complied immediately and completely with each and every one of these commands, reassuring Deputy Rodriguez 'that there is no problem.'" [First Amended Complaint, ¶¶21-27.]

These allegations constitute excessive force. The *Green* and *Robinson* cases support this assertion squarely. *Green v. City and County of San Francisco*, 751 F.3d 1039 (9th Cir. 2014); *Robinson v. Solano County,* 278 F.3d 1007 (9th Cir.2002).

## III. CONCLUSION

For the foregoing reasons, Plaintiff asserts that Defendants' motion be dismissed, in its entirety. Alternatively, Plaintiff respectfully seeks leave to amend the First Amended Complaint for Damages, in a manner consistent with this Court's ruling.

**Dated: July 27, 2015**

                        **Respectfully Submitted**

                        */s/ Franklin L. Ferguson, Jr.*

                        **By**_____
                        **Franklin L. Ferguson, Jr.,**
                        **Attorney for Plaintiff, Ken Sheppard**

# PROOF OF SERVICE

**STATE OF CALIFORNIA** )
)**ss.**
**COUNTY OF LOS ANGELES** )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action. My business address is: 3580 Wilshire Boulevard, Suite #1732, Los Angeles, CA 90010-2534.

On July 27, 2015, I served the foregoing document, described as, **PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS COUNTY OF LOS ANGELES, BONNIE HANSON, BOOKER T. HOLLIS, CAROLINE RODRIGUEZ AND TAI PLUNKETT TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**, on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Jennifer R. Jacobs, Esq.
Ivie, McNeill& Wyatt
444 S. Flower Street, Suite #1800
Los Angeles, CA 90071

[ ] **(BY MAIL)** The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] **(BY ELECTRONIC MAIL)** I caused a true and correct copy of the aforementioned document to be forwarded, via electronic mail, to the addressee.

Executed on July 27, 2015, at Los Angeles, California.

[ ] **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the addressee.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' FRCP 12(b)(6) MOTION

1. [X] **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 27, 2015, at Los Angeles, California.

LILIANA BERNARD

PLAINTIFF'S OPPOSITION TO DEFENDANTS' FRCP 12(b)(6) MOTION